UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LITO MARTINEZ ASIGNACION | CIVIL ACTION |
| VERSUS | NO: 11-627 |
| RICKMERS GENOA SCHIFFAHRTS | SECTION: "A" (4) |

### ORDER AND REASONS

Before the Court is a **Motion to Remand (Rec. Doc. 7)** filed by Plaintiff, Lito Martinez Asignacion ("Plaintiff"), and a **Motion to Stay Litigation and Compel Arbitration (Rec. Doc 11)** filed by Defendant, Rickmers Genoa Schiffahrts ("Defendant"). Defendant opposes the motion to remand, and Plaintiff opposes the motion to stay and compel arbitration. The motions, set for hearing on April 27, 2011, are before the Court on the briefs without oral argument. For the reasons that follow, the motion to remand is **GRANTED**, and the motion to stay and compel arbitration is **DENIED**.

### I. BACKGROUND

This case concerns personal injuries sustained by a foreign seaman on a vessel. Plaintiff, a citizen of The Republic of the Philippines ("the Philippines"), was employed by Defendant, a German corporation, to work as a fitter in the engine room of the M/V RICKMERS DALIAN, a vessel owned by Defendant. (Pet. ¶¶ 2-3.) Plaintiff and Defendant entered into a written employment contract that was executed by the Philippine government through the Philippine Overseas Employment Administration ("POEA"). (Def.'s Mem Opp'n to Mot. to Remand 4.) The employment contract incorporates the Philippine government's Standard Terms and Condition

1

Governing Employment of Filipino Seafarers On Board Ocean-Going Vessels ("Standard Terms"). (*Id.*) The Standard Terms require that all employment claims must be resolved through arbitration in the Philippines. Specifically, section 29 of the Standard Terms states that:

> In cases of claims and disputes arising from this employment, the parties covered by a collective bargaining agreement shall submit the claim or dispute to the original and exclusive jurisdiction of the voluntary arbitrator or panel of arbitrators. If the parties are not covered by a collective bargaining agreement, the parties may at their option submit the claim or dispute to either the original and exclusive jurisdiction of the National Labor Relations Commission (NLRC), pursuant to Republic Act (RA) 8042 otherwise known as the Migrant Workers and Overseas Filipinos Act of 1995 or to the original and exclusive jurisdiction of the voluntary arbitrator or panel of arbitrators.

(*Id.* at Ex. A.) Disputes submitted to the NLRC are resolved by arbitration. *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 900 (5th Cir. 2005). As a result, all employment disputes subject to the POEA's Standard Terms are resolved by arbitration. *See id.* In addition, Section 31 of the Standard Terms provides that all claims arising out of a seaman's employment shall be governed by Philippine law. (Def.'s Mem Opp'n to Mot. to Remand Ex. A.)

On or about October 26, 2010, the M/V RICKMERS DALIAN was traveling the Mississippi River near New Orleans when Plaintiff sustained severe burns after a condenser overflowed in the engine room. (Pet. ¶ 3.) As a result, Plaintiff filed suit in state court on November 12, 2010 against Defendant to recover for his injuries pursuant to the Jones Act and general maritime law. (Pl's Mem Supp. Mot. to Remand 2.) On March 21, 2011, Defendant removed the case to federal court pursuant to 9 U.S.C. § 205, arguing that the dispute relates to an arbitration agreement in Plaintiff's employment contract. (Def.'s Mem Opp'n to Mot. to Remand 4.) Plaintiff filed the instant motion to remand, arguing that remand is appropriate because his employment contract is unenforceable given that arbitration of his claims violates the public policy of the United States. (Pl's Mem Supp.

2

Mot. to Remand 1.) Specifically, Plaintiff contends that the choice of forum and choice of law clauses in his employment contract operate in tandem as a prospective waiver of his statutory rights in violation of the public policy of the United States. (*Id.*) In opposition, Defendant argues that removal was proper because 9 U.S.C. § 205 allows for removal of cases related to an arbitration agreement regardless of whether the arbitration agreement ultimately is enforceable. (Def.'s Mem Opp'n to Mot. to Remand 10-12.)

In addition, Defendant filed a motion to stay and compel arbitration, arguing that the arbitration agreement is valid and enforceable pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention"). (Def.'s Mem. Supp. Mot. to Stay & Compel Arbitration 2.) Defendant further asserts that federal public policy strongly favors arbitration and that Plaintiff has failed to satisfy his heavy burden in establishing that the arbitration agreement is invalid. (*Id.* at 8-11.) Plaintiff opposes the motion to stay and compel arbitration because the prospective waiver of statutory rights violates the public policy of the United States based on Supreme Court precedent. (Pl.'s Mem. Opp'n to . Mot. to Stay & Compel Arbitration 1.)

## II. **DISCUSSION**

### A. Law Governing Removal

It is well-established that the party invoking the jurisdiction of a federal court has the burden of proving that the exercise of such jurisdiction is proper. *In re North American Philips Corp.*, No. 91-3106, 1991 WL 40259, at *2 (5th Cir. 1991). Pursuant to 28 U.S.C. § 1441(a), a defendant may remove an action from state court to federal court if the federal court can exercise original subject matter jurisdiction over the action. 28 U.S.C. § 1441(a) (2006). Under 28 U.S.C. § 1441(b), "district courts have original jurisdiction founded on a claim or right arising under the Convention, treatises

or laws of the United States." 28 U.S.C. § 1441(b) (2006). The Convention is a "multi-lateral treaty that requires courts of a nation state to give effect to private agreements to arbitrate and to enforce arbitration awards made in other contracting states." *Thomas v. Carnival Corp.*, 573 F.3d 1113, 1116 (11th Cir. 2009). Specifically, § 203 of the Convention Act provides that "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treatises of the United States." 9 U.S.C. § 203 (2006). Notwithstanding the saving to suitors clause, cases arising under the Convention may be removed to federal court pursuant to § 205 of the Convention Act. 9 U.S.C. § 205 (2006). Section 205 provides as follows:

> [w]here the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending.

*Id.*

In *Beiser v. Weyler*, the Fifth Circuit held that an arbitration agreement under the Convention "relates to" a plaintiff's suit if the agreement "could conceivably affect the outcome of the plaintiff's case." *Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002). "[A]s long as the defendant claims in its petition that an arbitration clause provides a defense, the district court will have jurisdiction to decide the merits of that claim." *Id.* at 671-72. The Fifth Circuit further reasoned that Congress's use of the broad phrase "relates to" demonstrated Congress's intent to confer jurisdiction liberally under § 205. *Id.* at 674. Nevertheless, the Fifth Circuit also noted that "the arbitrability of a dispute will ordinarily be the first issue the district court decides after removal under § 205" and that a district court must remand a case back to state court if it finds that the arbitration clause does not provide a defense. *Id.* at 675.

4

An international agreement to arbitrate falls under the Convention if: "(1) there is an agreement in writing to arbitrate the dispute, (2) the agreement provides for arbitration in the territory of a Convention signatory, (3) the agreement arises out of a commercial legal relationship, and (4) a party to the agreement is not an American citizen." *Lim*, 404 F.3d at 903 (quoting *Francisco v. Stolt Achievement MT*, 293 F.3d 270, 273 (5th Cir. 2002)). If these jurisdictional requirements are satisfied, then the district court is required to order arbitration. *Francisco*, 293 F.3d at 273; *see also Sedco, Inc. v. Petroleos Mexicanos Mexican Nat. Oil Co.*, 767 F.2d 1140, 1144 (5th Cir. 1985) ("The Convention contemplates a very limited inquiry by courts when considering a motion to compel arbitration."). Nevertheless, even if these jurisdictional requirements are met, removal is improper if affirmative defenses render the arbitration agreement null and void, inoperative, or incapable of being performed. *See* 9 U.S.C. § 201 (2006); *see also Sedco, Inc.*, 767 F.2d at 1145. In particular, arbitration agreements may be declared null and void when they violate public policy.[1] *See Vimar Seguros y Reaseguros v. M/V Sky Reefer*, 515 U.S. 528, 540 (1995); *Thomas*, 573 F.3d at 1123-24.

In the instant case, Plaintiff's suit initially was removable pursuant to § 1441(a) and § 1441(b) because his claims fall under the Convention, over which this Court has original jurisdiction. It is undisputed that Plaintiff's employment contract falls under the Convention given that Plaintiff has satisfied the four jurisdictional requirements for arbitration under the Convention.

---

[1] Courts also may refuse to confirm arbitration awards based on public policy grounds pursuant to Article V § (2)(b) of the Convention. *See* Convention, art. V, § (2)(b). Article V § (2)(b) provides that "[r]ecognition of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that . . . [t]he recognition or enforcement of the award would be contrary to the public policy of that country." Convention, art. V, § (2)(b).

First, Plaintiff's employment contract qualifies as an agreement in writing to arbitrate the dispute.[2] Second, the employment contract provides for arbitration in the Philippines, a signatory of the Convention. Third, the employment contract arises out of a commercial relationship because seamen employment contracts are considered commercial. *See Francisco*, 293 F.3d at 274. Fourth, Plaintiff is not a United States citizen. Additionally, removal was proper pursuant to § 205 because the arbitration agreement in Plaintiff's employment contract conceivably could affect the outcome of this case given that the employment contract provides for arbitration in the Philippines. Notwithstanding § 205's liberal removal provision, Plaintiff argues that removal is improper because his affirmative defense renders the arbitration clauses in his employment contract unenforceable. Specifically, Plaintiff asserts that the agreement to arbitrate should not be enforced because the choice of forum and choice of law clauses violate the public policy of the United States because they operate in tandem as a prospective waiver of Plaintiff's statutory right to bring a Jones Act claim in a forum that would apply United States law. Although removal initially was proper, this Court must decide whether Plaintiff's affirmative defense renders his employment contract unenforceable.

**B. Law Governing the Enforcement of International Arbitration Agreements**

Even though Plaintiff's particular public policy argument has not been addressed by the Supreme Court or the Fifth Circuit, it is helpful to examine Supreme Court precedent on the enforceability of forum selection clauses and choice of law clauses in international arbitration agreements.

In *M/S Breman v. Zapata Off-Shore Co.*, the Supreme Court held that forum selection clauses

---

[2] Regardless of whether Plaintiff's employment dispute is submitted to the NLRC or to a voluntary arbitrator or panel of arbitraries, the dispute will be resolved by arbitration. *See Lim*, 404 F.3d at 900.

in admiralty cases are prima facie valid and should be enforced unless enforcement is unreasonable under the circumstances. *M/S Breman v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). Forum selection clauses are unreasonable when "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or judicial decision." *Id.* at 15. The Court further explained that it was critical to American foreign policy to enforce forum selection clauses in international agreements, stating that:

> The expansion of American business and industry will hardly be encouraged if, notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be resolved under our laws and in our courts . . . We cannot have trade and commerce in world markets and international waters exclusively on our terms, governed by our laws, and resolved in our courts.

*Id.* at 9; *see also Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974) (noting that the purpose of the Convention was "to encourage the recognition and enforcement of commercial arbitration agreements and international contracts and to unify the standard by which agreements to arbitrate are observed and arbitral awards are enforced in signatory countries"). Additionally, in the Fifth Circuit, "there is a strong presumption in favor arbitration and a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity." *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991).

In *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, the Supreme Court reiterated the importance of enforcing forum selection clauses, finding that, "concerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes require that we enforce the parties' agreement, even assuming that a contrary result would be forthcoming in a

domestic context." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 629 (1985). In *Mitsubishi Motors*, the Supreme Court concluded that an agreement to arbitrate claims in Japan arising under the Sherman Act was enforceable because United States law would be applied and the federal policy favoring arbitration supported arbitration. *Id.* at 637. Although it was clear that American law would be applied, the Court made the following observation in a footnote, "We merely note that in the event the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy." *Id.* at 637 n.19. In particular, Plaintiff relies on this footnote in arguing that his employment contract violates public policy because the choice of forum and choice of law clauses in his employment contract operate in tandem as a prospective waiver of his right to assert a Jones Act claim.

Following the Supreme Court's opinion in *Mitsubishi Motors*, the Supreme Court also upheld a foreign arbitration clause on interlocutory appeal in *Vimar Seguros y Reaseguros v. M/V Sky Reefer*. *Vimar*, 515 U.S. at 540. In *Vimar*, the plaintiff argued that a foreign arbitration clause in a bill of lading, which provided for arbitration in Japan, was unenforceable because there was no guarantee that the foreign arbitrators would apply United States law. *Id.* at 539. The Supreme Court found the plaintiff's argument to be premature at the interlocutory stage given that the plaintiff failed to establish that the foreign arbitrators would not apply United States law and that there would be no subsequent opportunity for review. *Id.* at 540. As a result, the Court enforced the arbitration agreement. Nevertheless, the Court quoted *Mitsubishi Motors*, stating that "[w]ere there no subsequent opportunity for review and were we persuaded that 'the choice-of-forum and a choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory

8

remedies . . . we, would have little hesitation in condemning the agreement as against public policy.'" *Id.* (quoting *Mitsubishi Motors Corp.*, 473 U.S. at 637 n.19).

Relying on *Mitsubishi Motors* and *Vimar*, the Eleventh Circuit in *Thomas v. Carnival Corp.* ruled that an agreement to arbitrate a Seaman's Wage Act claim in the Philippines under Panamanian law was void against public policy because the choice of forum and choice of law clauses "operated in tandem to completely bar [the plaintiff] from relying on any U.S. statutorily-created causes of action." *Thomas*, 573 F.3d at 1123-24. In reaching its holding, the Eleventh Circuit concluded that arbitration clauses should be upheld only if it evident that (1) United States law definitely will be applied, or (2) that there is a possibility that United States law will be applied and there will be a subsequent opportunity for review. *Id.* at 1123. Applying these principles, the Eleventh Circuit found that Panamanian law definitely would be applied and that there was no opportunity for review given the "distinct possibility" that the plaintiff would not be entitled to an award under Panamanian law. *Id.* at 1123-24. As a result, the Eleventh Circuit concluded that the arbitration agreement was null and void as a matter of public policy. *Id.*

In addition, several district courts in the Eleventh Circuit have extended *Thomas* to invalidate arbitration agreements requiring the application of foreign law to Jones Act claims in foreign forums. *See Williams v. NCL (Bahamas) Ltd.*, No. 10-2204, 2011 WL 1206820, at *4-5 (S.D. Fla. Mar. 31, 2011); *Ruiz v. Carnival Corp.*, 754 F. Supp. 2d 1328, 1331 (S.D. Fla. 2010); *Morocho v. Carnival Corp.*, No. 10-21715, 2010 WL 5589012, at *3-4 (S.D. Fla. Oct. 28, 2010); *Watt v. NCL (Bahamas) Ltd.*, No. 10-20293, 2010 WL 2403107, at *2 (S.D. Fla. June 15, 2010); *Kristic v. Princess Cruise Lines, Ltd.*, No. 09-23846, 2010 WL 1542083, at *5 (S.D. Fla. Mar. 25, 2010); *Cardoso v. Carnival Corp.*, No. 09-23442, 2010 WL 996528, at *3 (S.D. Fla. Mar. 16, 2010);

*Kovacs v. Carnival Corp.*, No. 09-22630, 2009 WL 4980277, at *1 (S.D. Fla. Dec. 21, 2009).

Moreover, in *Cardoso v. Carnival Corp.*, the court further explained why *Thomas* should be applied to Jones Act claims, stating as follows:

> While Defendant is correct insofar as the Eleventh Circuit's narrow holding in *Thomas* applied only to claims asserted pursuant to the Seaman's Wage Act, a holistic reading of *Thomas* indicates that the Eleventh Circuit's reasoning applies with equal force to claims brought pursuant to the Jones Act. Specifically, I note that the Eleventh Circuit did not focus on the unique nature of the Seaman's Wage Act in reaching its conclusion that foreign choice-of-law and arbitration clauses can-if enforced in tandem-constitute a prospective waiver of statutory rights in violation of public policy. Rather, the Eleventh Circuit focused on the fact that the clauses would have 'operated in tandem' to completely bar Thomas from relying on *any* U.S. statutorily-created causes of action.

*Cardoso*, 2010 WL 996528, at *3.

### C. Analysis of Plaintiff's Public Policy Affirmative Defense

Based on the foregoing, the Court finds that Plaintiff has met his heavy burden under *Breman* in establishing that the arbitration clauses in his employment contract are unenforceable in violation of United States public policy. Although the choice of forum clause in Plaintiff's employment contract requiring arbitration in the Philippines is presumed valid under *Breman*, *Mitsubishi Motors*, and *Scherk*, this Court adopts the Eleventh Circuit's reasoning in *Thomas* and finds that the instant choice of forum clause and choice of law clause operate in tandem to deprive Plaintiff of his statutory rights under the Jones Act.

The Court finds the Eleventh Circuit's reasoning in *Thomas* to be persuasive given that it "follows directly from the Supreme Court precedent in *Mitsubishi Motors* and *Vimar* and provides a clear standard for when statutory claims under United States law may be sent to arbitration." *See Dumitru v. Princess Cruise Lines, Ltd.*, 732 F. Supp. 2d 328, 341 (S.D.N.Y. 2010). Although *Thomas* limited its decision to claims arising under the Seaman's Wage Act, this Court is unaware

of any authority affording more protection to seamen under the Seaman's Wage Act than to seamen under the Jones Act. In particular, the Seaman's Wage Act grants seamen the right to receive timely payment of wages from their employers and allows for collection of treble-damages for late payments. 46 U.S.C. § 10313 (2006). The penalty wages exist "to secure prompt payment of seaman's wages . . . and thus to protect them from harsh consequences of arbitrary and unscrupulous action of their employers, to which, as a class, they are peculiarly exposed." *Collie v. Fergusson*, 281 U.S. 52, 55 (1930). Similarly, the Jones Act exists to protect seamen from their employers by imposing a lower burden of proof for the plaintiff on causation and allowing seamen to assert vicarious liability claims against their employers for the negligence of the ships' officers and crew. *See* 46 U.S.C. § 30104 (2006); 45 U.S.C. § 51 (2006); *The Arizona v. Anelich*, 298 U.S. 110, 123 (1936) (noting that the Jones Act was enacted "for the benefit and protection of seamen who are peculiarly the wards of admiralty"); *Coats v. Penrod Drilling Corp.*, 61 F.3d 1113, 1136 n.27 (5th Cir. 1995) ("The special solicitude for seamen is, of course, the foundation for the Jones Act, perhaps the seaman's most common form of recovery when he is injured as the result of the negligence of his employer."). Thus, both the Seaman's Wage Act and the Jones Act serve to protect seamen from their employers.

      Moreover, the Fifth Circuit has reiterated the need to protect seamen as wards of admiralty. *See Karim v. Finch Shipping Co. Ltd.*, 374 F.3d 302, 310-11 (5th Cir. 2004). In *Karim v. Finch Shipping Co. Ltd.*, the Fifth Circuit delineated the various protections afforded to seamen, including statutory protection under the Seaman's Wage Act and the Jones Act, liberal construction of statutes in favor of seamen, heavy burdens placed on employers to prove the validity of settlement agreements with seamen, and judicial discretion over contingent fee agreements with seamen. *Id.*

The Fifth Circuit reasoned that seamen are afforded such protections based on the doctrine that seamen are wards of admiralty. *Id.* Furthermore, the Fifth Circuit quoted Justice Story's rationale for the doctrine, as follows:

> Every court should watch with jealousy an encroachment upon the rights of seamen, because they are unprotected and need counsel; because they are thoughtless and require indulgence; because they are credulous and complying; and are easily overreached. But courts of maritime law have been in the constant habit of extending towards them a peculiar, protecting favor and guardianship. They are emphatically the wards of the admiralty; and though not technically incapable of entering into a valid contract, they are treated in the same manner, as courts of equity are accustomed to treat young heirs, dealing with their expectancies, wards with their guardians, and cestuis que trust with their trustees.

*Id.* at 310 (quoting *Harden v. Gordon,* 11 F. Cas. 480, 485 (D. Me.1823) (Story, J.)). Given that the Fifth Circuit has recognized that seamen are entitled to additional protections and that both the Seaman's Wage Act and the Jones Act serve to protect seamen, this Court finds no reason why claims asserted under the Jones Act should not be afforded the same protection as claims asserted under the Seaman's Wage Act. Moreover, as recognized by the court in *Cardoso*, the Eleventh Circuit in *Thomas* did not focus on the unique nature of the Seaman's Wage Act in reaching its decision.

Accordingly, the Court applies the principles of *Thomas* to the instant case. As in *Thomas*, but unlike in *Vimar*, no uncertainty exists as to the law to be applied to Plaintiff's claims. Both Plaintiff and Defendant concede that Philippine law will govern Plaintiff's claims. Given that there is no possibility that United States law will be applied, the subsequent opportunity for review is irrelevant. Even if Plaintiff has a valid claim under the Jones Act, but recovers nothing under Philippine law, the Court would have no opportunity to review that decision given that there would be no award to enforce. *See Thomas*, 573 F.3d at 1124 ("If, applying Panamanian law, Thomas

receives no award in the arbitral forum—a distinct possibility given the U.S. based nature of his claim—he will have nothing to enforce in U.S. courts, which will be deprived of any later opportunity to review."). Thus, the Court concludes that Plaintiff's employment contract violates the public policy of the United States because the choice of forum and choice of law clauses operate in tandem as a prospective waiver of Plaintiff's right to assert a Jones Act claim. In reaching this decision, the Court recognizes that United States law ultimately may not apply. Nevertheless, Plaintiff is entitled to a choice of law analysis to determine whether he is entitled to the protections of the Jones Act.

Notwithstanding the Eleventh Circuit's opinion in *Thomas*, Defendant directs the Court to the Fifth Circuit's opinions in *Lim v. Offshore Specialty Fabricators, Inc.*, *Francisco v. Stolt Achievement MT*, and *Haynsworth v. The Corp*. The Court finds that *Lim* and *Francisco* are inapplicable to the instant case given that those cases concerned whether seamen employment contracts were controlled by the Convention. Moreover, those cases did not address whether a choice of forum clause and a choice of law clause in a seaman's employment contract operated together to divest a seaman of his statutory remedies in violation of the public policy of the United States.

Thus, the Court now turns to *Haynsworth*. In *Haynsworth*, the Fifth Circuit held that a forum selection clause requiring suit in England and a choice of law clause providing for the application of English law in the investors' agreement did not violate public policy. *Haynsworth v. The Corp.*, 121 F.3d 956, 968-69 (5th Cir. 1997). Like in the instant case, the plaintiffs argued that the forum selection and choice of law clauses operated in combination to extinguish their statutory rights under United States securities laws in violation of the public policy of the United States. *Id.* at 968. The

13

Fifth Circuit rejected the plaintiffs' arguments based on the federal policy favoring arbitration and the need to promote international commerce. *Id.* at 969. The Court also noted that English law adequately protected the plaintiffs and that, in some respects, it provided even greater protection. *Id.* at 969-70. Although the Fifth Circuit's reasoning in *Haynsworth* would appear to apply to the instant case, the Court finds that the instant case is distinguishable given that Philippine law, unlike English law, will not afford Plaintiff adequate protection. Moreover, unlike American securities laws, which typically govern disputes between sophisticated parties, the Fifth Circuit has recognized that the Jones Act serves a unique purpose in protecting seamen as wards of admiralty. *See Karim*, 374 F.3d at 310-11. Therefore, the Court declines to extend the Fifth Circuit's reasoning in *Haynsworth* to the instant case. Furthermore, the Court finds that the standard articulated in *Thomas* provides better protection for seamen.

### D. Remand

Additionally, the Court notes that Defendant's sole basis for removal was based on the Court's jurisdiction under the Convention to enforce the arbitration agreement. Nevertheless, the Court, having found that the arbitration agreement is unenforceable in violation of United States public policy and no longer provides a defense, concludes that remand is proper in accordance with *Beiser*.[3]  *See Beiser*, 284 F.3d at 675 ("If the district court decides that the arbitration agreement does not provide a defense, and no other grounds for federal jurisdiction exist, the court must ordinarily remand the case back to state court."). Accordingly, the instant case shall be remanded back to state court.

---

[3] The Court recognizes that Plaintiff has asserted other non-statutory claims. Nevertheless, these claims also must be remanded because Plaintiff's non-statutory claims fall under the scope of the null and void arbitration clause.

### III. CONCLUSION

Accordingly, and for the foregoing reasons;

**IT IS HEREBY ORDERED** that the **Motion to Remand (Rec. Doc. 7)** filed by Plaintiff, Lito Martinez Asignacion is **GRANTED***;*

**IT IS FURTHER ORDERED** that the **Motion to Stay Litigation and Compel Arbitration (Rec. Doc 11)** filed by Defendant, Rickmers Genoa Schiffahrts is **DENIED**;

**IT IS FURTHER ORDERED** that the case shall be **REMANDED** back to state court.

This 25th day of May, 2011.

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE